# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| PHILIP AMARA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>REGAL CINEMAS, INC.,<br><br>    Defendant. | Case No. 8:19-cv-03125<br><br>CLASS ACTION<br><br>(DEMAND FOR JURY TRIAL) |

## CLASS ACTION COMPLAINT

Plaintiff Philip Amara, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support exists for the allegations set forth in this complaint, and that a reasonable opportunity for discovery will reveal such evidence.

## NATURE OF ACTION

1. Plaintiff brings this Class Action Complaint for legal and equitable remedies resulting from the illegal actions of Regal Cinemas, Inc. ("Regal" or "Defendant") in sending automated text message advertisements to his cellular telephone and the cellular telephones of numerous other individuals across the country, in clear and direct violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper because Plaintiff resides in this District, because Defendant directed the subject unsolicited text message advertisements into this District,

and because Plaintiff received Defendant's unsolicited text message advertisements in this District, such that his claims alleged herein arose in substantial part in this District.

**PARTIES**

4. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a resident and citizen of the State of Florida.

5. Defendant Regal Cinemas, Inc. operates one of the largest and most geographically diverse chain of movie theaters in the United States, consisting of 7,211 screens in 549 theatres in 42 states"[1] that generated total revenues of $3.1 billion during the fiscal year ending December 31, 2016.[2] Defendant is organized and incorporated under the laws of Delaware and maintains, and at all times mentioned herein maintained, its corporate headquarters in Knoxville, Tennessee. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

6. In 1991, faced with a national outcry over the volume of robocalls being received by American consumers, Congress enacted the TCPA to address certain abuse telecommunications practices. The TCPA prohibits, *inter alia*, making any telephone call to a cellular telephone using a "prerecorded or artificial voice" or an "automatic telephone dialing system" ("ATDS" or "autodialer") absent an emergency purpose or the "express consent" of the party called.

7. The TCPA further provides that any text message constituting an "advertisement" or "telemarketing" message within the meaning of the TCPA requires the sender to acquire the recipient's "prior express <u>written</u> consent" before initiating such a message via an autodialer.

8. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and text messages are prohibited because receiving them is a greater nuisance and more invasive than

---

[1] "About Regal," Regal Cinemas, Inc., *available at* https://www.regmovies.com/static/en/us/about (last accessed December 13, 2019).

[2] Regal Entertainment Group, 2016 Form 10-K, *available at* https://www.sec.gov/Archives/edgar/data/1168696/000116869618000003/rgc201710k.htm.

receiving live or manually dialed telephone solicitations.  The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes are used.  Moreover, because cellular telephones are carried on their owners' persons, unsolicited calls and texts transmitted to such devices via an autodialer are distracting and aggravating to their recipients and intrude upon their recipients' seclusion.

9. Thus, to state a cause of action for violation of the TCPA, a plaintiff need only set forth allegations demonstrating that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

10. Plaintiff was at all times mentioned herein the subscriber of the cellular telephone number (727) ***-2415 (the "*2415 Number").  The *2415 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

11. Beginning in or around July 2019, Defendant transmitted, by itself or through an intermediary or intermediaries, numerous text messages advertising its goods and services to the *2415 Number without Plaintiff's "prior express written consent."

12. Specifically, on or about July 19, 2019 at 12:35 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: Nala is Swahili for "gift" & we're gifting you 500 EXTRA CREDITS when you see The Lion King in RealD 3D 7/18-7/25 Tix: bit.ly/2YXf6d3 Stop=stop

13. The link in the above-depicted text message (bit.ly/2YXf6d3) redirects to a website operated and maintained by or on behalf of Regal, where Regal lists times that "The Lion King"

is shown at its theaters and sells tickets to such showings (the purchase of which is a prerequisite to receiving the "gift" of "500 EXTRA CREDITS" mentioned in the above-depicted text message).

14. On or about August 2, 2019 at 2:40 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: Buckle up! Watch Hobbs & Shaw as many times as you can handle with Unlimited! Endless movie tickets & more. Subscribe: bit.ly/2ZvDliQ Stop=stop

15. The link in the above-depicted text message (bit.ly/2ZvDliQ) redirects to a website operated and maintained by or on behalf of Regal, where Regal makes available for sale the "Regal Unlimited Movie Subscription Pass," which is a subscription-based service that Regal offers to consumers for a monthly fee.

16. On or about August 9, 2019 at 1:14 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: Are you Springsteen's #1 fan? Prove it & get 500 EX-TRA CREDITS attending the Blinded by the Light-Springsteen Fan Event 8/12 Tix: bit.ly/2YPuSpm Stop=stop

17. The link in the above-depicted text message (bit.ly/2YPuSpm) redirects to a mobile app store where consumers can download the Regal mobile app (which is operated and maintained by or on behalf of Regal) and thereafter purchase tickets for the "Blinded by the Light-Springsteen

Fan Event" (the purchase of which is a prerequisite to receiving the "500 EXTRA CREDITS" mentioned in the above-depicted text message).

18. On or about September 27, 2019 at 3:22 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: It's National No Excuses Day! Take a break & have some fun! See any movie 9/27-9/29 & we'll reward you w/ 500 EXTRA CREDITS Tix: regmovies.com Stop=stop

19. The link in the above-depicted text message (regmovies.com) redirects to a website operated and maintained by or on behalf of Regal, where Regal lists show times for films showing at its theaters and sells tickets to such showings (the purchase of which is a prerequisite to receiving the "500 EXTRA CREDITS" mentioned in the above-depicted text message).

20. On or about October 4, 2019 at 4:01 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: Enter for a chance to win a Date Night Out! 2 tickets and 1 sm popcorn & soft drink! Contest runs 9/30-10/7. Enter Now: regmovi.es/2piVJhn Stop=stop

21. The link in the above-depicted text message (regmovi.es/2piVJhn) redirects to a website operated and maintained by or on behalf of Regal, where Regal sells its products and services to consumers.

22. On or about October 25, 2019 at 4:53 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: Use the force, but if you can't, the Regal App works great too. Get advance tix to Star Wars: The Rise of Skywalker today! Tix bit.ly/2W9T2vb
> Stop=stop

23. The link in the above-depicted text message (bit/ly/2W9T2vb) redirects to a website operated and maintained by or on behalf of Regal, where Regal sells tickets to showings of "Star Wars: The Rise of Skywalker" at its theaters.

24. On or about November 1, 2019 at 12:19 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: Halloween may be over, but the treats are still coming! Get 500 EXTRA CREDITS when you see any movie this weekend 11/1-11/3. Tix: regmovies.com
> Stop=stop

25. The link in the above-depicted text message (regmovies.com) redirects to a website operated and maintained by or on behalf of Regal, where Regal lists show times for various films

showing at its theaters and sells tickets to such showings (the purchase of which is a prerequisite to receiving the "treat[]" of "500 EXTRA CREDITS" mentioned in the above-depicted text message).

26. On or about November 29, 2019 at 6:57 a.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: BLACK FRIDAY DEAL: Get $60 off Regal Unlimited when you pay in full for your 12-month movie subscription 11/29-12/2. Join now: bit.ly/2XIVMjS Stop=stop

27. The link in the above-depicted (bit.ly/ZXIVMjS) redirects to a website operated and maintained by or on behalf of Regal, where Regal makes available for sale the "Regal Unlimited Movie Subscription Pass," which is a subscription-based service that Regal offers to consumers for a monthly fee.

28. On or about November 29, 2019 at 7:11 p.m., Regal transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message advertisement to the *2415 Number without Plaintiff's prior express written consent:

> REGAL: We're gifting 500 EXTRA CREDITS this holiday season 12/2-12/31 for any size Popcorn & Soda combo (one per day). Dets: regmovies.com/promotions Stop=stop

29. The link in the text message (regmovies.com/promotions) redirects to a website operated and maintained by or on behalf of Regal, where Regal sells tickets to showings of movies at its theaters and the products sold at its theaters (including "popcorn and soda," the purchase of which is a prerequisite to receiving the "gift[]" of "500 EXTRA CREDITS" mentioned in the above-depicted text message).

30. Each of the unsolicited text messages depicted in paragraphs 12, 14, 16, 18, 20, 22, 24, 26, and 28 above constitutes an "advertisement" or "telemarketing" message within the meaning of the TCPA and its implementing regulations because each such message was aimed at promoting the commercial availability of Defendant's products and services and ultimately selling such products and services. Defendant offered such products and services for sale to Plaintiff for the purpose of deriving commercial profit from the purchase of any such products or services ultimately made by Plaintiff.

31. Defendant, like several companies, use a short code, defined as "a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising."[3] Companies like Defendant use short codes to "bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."[4]

32. And indeed, in this case each of the unsolicited text message advertisements depicted in paragraphs 12, 14, 16, 18, 20, 22, 24, 26, and 28 above originated from the telephone number 61633, which is an SMS short code leased or owned by or on behalf of Defendant that Defendant uses to transmit advertisements to consumers *en masse*, in an automated fashion and without human intervention, in connection with its text-message marketing campaigns.[5]

---

[3] *See* https://usshortcodes.com/faqs (last visited December 1, 2019).

[4] *Id.*

[5] *See* https://usshortcodedirectory.com/directory/short-code-61633/ (last visited December 12, 2019).

33. Because Plaintiff's cellular phone alerts him whenever he receives a text message, each of the unsolicited text message advertisements transmitted by or on behalf of Defendant to Plaintiff's *2415 Number invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion upon receipt.

34. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff's *2415 Number and to the numbers of the unnamed Class members occurred using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A). Specifically, Defendant utilized an "automatic telephone dialing system" because all such text messages were sent from an SMS short-code telephone number used for the exclusive purpose of transmitting text messages to consumers *en masse*; because the subject text messages contained the same or substantially the same generic, pro forma advertising copy; because the dialing equipment utilized by or on behalf of Defendant includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by or on behalf of Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, and to receive and store lists of telephone numbers, and to then dial such numbers, *en masse*, in an automated fashion without human intervention.

35. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other putative Class members in an automated fashion and without human intervention, with hardware and software that received and stored telephone numbers and then automatically dialed such numbers.

36. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the *2415 Number occurred via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

37. Neither Plaintiff, nor the other members of the Class, provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit the subject text message advertisements to the *2415 Number or to any other Class member's cellular

telephone number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A)

38. None of Defendant's text messages to the *2415 Number or to the cellular telephone numbers of the putative Class members was sent for an emergency purpose.

## CLASS ALLEGATIONS

39. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as:

> All persons in the United States who, at any time between December 19, 2015 and the present:
>
> (1) subscribed to a cellular telephone service;
>
> (2) received, at the telephone number assigned to such service, more than one text message containing the word "REGAL" from the short-code number 61633; and
>
> (3) for whom Regal Cinemas, Inc. lacks any record establishing the person's provision of "express written consent" to receive such messages prior to the initiation of such messages.

40. Excluded from the class are Defendant, its officers and directors, members of the immediate families of the foregoing, legal representatives, heirs, successors, or assigns of the foregoing, and any entity in which Defendant has a controlling interest.

41. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

42. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

43. This Class Action Complaint seeks injunctive relief and monetary damages.

44. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

45. On application by Plaintiff's counsel for class certification, Plaintiff may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

46. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

47. <u>Typicality</u>. Plaintiff received more than one text message containing the word "REGAL" from the short-code telephone number 61633, and Defendant lacks any record establishing his "prior express written consent" to receive such messages from Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

48. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to or which conflict with the interests of the absent members of the Class, and he is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

49. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel are experienced in handling complex class action claims, in particular claims brought under the TCPA and other consumer protection statutes.

50. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

    a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant sent multiple text messages containing the word "REGAL" to Plaintiff's and Class members' cellular telephones from the short-code telephone number 61633;

    b) Whether such text messages were sent using an "automatic telephone dialing system";

    c) Whether the text messages sent constituted "advertisements" or "telemarketing";

    d) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained the "prior express written consent" within the meaning of the TCPA to send the subject text messages to the recipients of such messages, assuming such an affirmative defense is raised;

    e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

51. <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance

with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such messages to be sent to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

52. Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

53. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CLAIM FOR RELIEF**
**VIOLATION OF THE TELEPHONE**
**CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

54. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

55. Plaintiff and each member of the Class received more than one text message containing the word "REGAL," sent by or on behalf of Defendant during the class period, from the short-code telephone number 61633. All such messages sent to Plaintiff and the members of

the proposed Class promoted the sale of tickets to movies shown at Regal's theaters or the commercial availability of other services or products sold by Defendant; consequently, all such messages constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations.

56. Additionally, all such messages were sent via the same dialing technology, which qualified as an ATDS within the meaning of the TCPA, as evidenced by the generic nature of the text messages, the use of a dedicated short code to transmit the messages, and the capacities, capabilities, and features of the technology as alleged above.

57. Neither Plaintiff nor any other member of the Class provided Defendant "prior express written consent" within the meaning of the TCPA to receive the autodialed text message advertisements at issue in this case.

58. Defendant's use of an ATDS to transmit text messages advertisements to telephone numbers assigned to a cellular telephone service, including to Plaintiff's *2415 Number and the numbers of all members of the proposed Class, absent the requisite "prior express written consent", as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A)(iii).

59. As a result of Defendant's violations of the TCPA, Plaintiff and all Class members are entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

60. Plaintiff and the other Class members seek an award of attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Philip Amara prays for relief and judgment in favor of himself and the Class as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. As a result of each of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member statutory damages of $500.00 (or $1,500.00 for any violations committed willfully or knowingly);

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

D. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

Dated: December 19, 2019

Respectfully submitted,

**HEDIN HALL LLP**

By: /s/ Frank S. Hedin
     Frank S. Hedin

Frank S. Hedin (FBN 109698)
1395 Brickell Ave, Suite 1140
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-mail: fhedin@hedinhall.com

*Counsel for Plaintiff and the Putative Class*