UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHILIP AMARA,
    Plaintiff,

v.                                                        CASE NO.:  8:19-cv-3125-TPB-CPT

REGAL CINEMAS, INC.,
    Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND FOR LEAVE TO TAKE DISCOVERY BEFORE ENTRY OF FINAL JUDGMENT**

Defendant, REGAL CINEMAS, INC., ("Defendant"), by and through its undersigned counsel, responds to and opposes Plaintiff's Motion for Class Certification and for Leave to Take Discovery Prior to Entry of Final Judgment and states as follows:

**RELEVANT FACTS AND PROCEDURAL HISTORY**

1. During all times relevant to this matter, Defendant administered the following SMS process for sending marketing and advertising texts (see Declaration of Denise Davis, ¶¶ 4-5, attached hereto as Exhibit A):

    A. Individuals signed up for the Regal Crown Club ("RCC") and received an RCC card by providing the following information on the Regal website, Regal app, or other Regal channel: name, email address, password, mobile telephone number, address, birthday and gender.

    B. While joining, RCC members can opt-in to receiving texts messages by selecting toggle or online and updating their account profile on a screen that reads:  "By selecting this option and tapping "Update Account" below, I

consent to receive up to 4 marketing or other text messages per month from Regal Cinemas at the mobile number provided. I understand that this consent is not required to purchase any goods or services from Regal. Text message and data rates may apply. Reply HELP for help, STOP to Cancel. See full SMS Terms & Conditions." RCC members then selects/toggles or checks a box to opt-in after accepting the SMS Terms & Conditions.

C. Once the RCC member opted-in, the RCC member received an initial text that read: "Promotional Alerts. Reply YES to get Regal Cinemas promotional texts. 4 msgs/month. Msg&Data rates may apply. Reply HELP for help. Reply STOP to cancel.

D. If the RCC member replied YES, then the member received a second text that read: "Welcome to Regal Cinemas mobile promotions. Your first notification is coming soon. Msg&Data rates may apply. Reply HELP for help. Reply stop to cancel.

E. Within 24 hours of replying YES to the initial text, Defendant sent a reward to the RCC member, such as a voucher for a free small popcorn, to the RCC member's RCC card.

F. RCC members who have opted-in received up to 4 texts per month. Members could opt-out by replying STOP to a text or by contacting customer service for assistance.

G. Regal uses Movio, as its SMS system. Movio overlays the Regal point of sale system and enables Defendant's marketing team to target RCC members by cinema activity, transaction data, movie-going behavior and the like.

        Defendant's marketing team uses filters to target the best audience for a given text message. The filters are used to include and exclude RCC members for the message. The use of the filters enables the marketing team to create a recipient list that the marketing team would like to target.

H. The marketing team then set up a campaign, defined the message to be sent, and attached the recipient list for the message. The marketing team then clicked the option to execute the campaign.

I. Movio has a contract with Click Send and the text message to the targeted recipient list was sent through the Click Send platform. Defendant does not have a relationship with Click Send directly.

J. Defendant's SMS system cannot send text messages to RCC members without the intervention of Defendant's marketing team in selecting the target recipient list, creating the campaign and text message and clicking the option to execute the campaign.

K. Defendant has not and does not send marketing or advertising texts to individuals unless they are RCC members who have opted-in to receiving the texts. If members opt-out by replying to a text, their removal from receiving further texts is instantaneous. If a member calls or e-mails the Customer Relations Department to request to be removed from receiving further texts, the removal takes effect when it is processed, which could take 5-10 days.

2. On December 19, 2019, Plaintiff filed a Class Action Complaint in this Court alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 2227 (the "TCPA"). (Dkt. 1).

3. On December 30, 2019, the Complaint was served on Defendant through its registered agent, CT Corporation, thereby making the response pleading date January 21, 2019.

*4.* Regal Cinemas is a subsidiary of Cineworld Group plc, which headquartered in the United Kingdom. (See Defendant's Motion to Set Aside Default, Dkt. 10). The General Counsel for Cineworld is located in Israel and is typically involved in the selection of outside counsel for class action cases. *Id.* Consequently, the Complaint was sent to the General Counsel in Israel. *Id.* Due to an oversight, outside counsel was not selected by the January 21, 2019 response date and no responsive pleading was filed. *Id.*

5. On January 23, 2020, Plaintiff's counsel filed Plaintiff's Application for Clerk's Entry of Default Against Defendant Regal Cinemas, Inc. Pursuant to Fed. R. Civ. P. 55(A) (Dkt. 6). The Clerk entered an Entry of Default that same day. (Dkt. 8).

6. On January 27, 2020, the Eleventh Circuit Court of Appeals entered its decision in *Glasser v. Hilton Grand Vacations Company, LLC,* 2020 WL 415811 (11th Cir. Jan. 27, 2020). In that case, the Court addressed and narrowed the definition of an "automated telephone dialing system ("ATDS") under the TCPA. Specifically, the Court ruled that, to be an ATDS under the TCPA, the telephone/text system must randomly or sequentially generate and dial telephone numbers without human intervention. Thus, the Court affirmed summary judgment in favor of the defendant Hilton Grand Vacations Company on plaintiff Glasser's TCPA claims because the equipment used to send the telephone calls that allegedly violated the TCPA was not an ATDS because it did not produce Glasser's telephone calls using a random or sequential number generator and dial them. Rather, the equipment made telephone calls to Glasser from a targeted list. Further, the Court affirmed summary judgment in favor of the Defendant Pennsylvania Higher Education Assistance Agency on plaintiff Evan's TCPA claims because the equipment

4

used to make the telephone calls to plaintiff Evan's was not an ATDS because it required human intervention to make the calls. *Id.* at 20.

7. On February 10, 2020, Plaintiff served his Motion for Class Certification and for Leave to Take Discovery Before Entry of Final Judgment on Defendant by certified mail (Dkt. 9). In this motion, Plaintiff seeks to certify the following class:

> All persons in the United States, who at any time between December 19, 2015 to the present:
>
> (1) Subscribed to a cellular telephone service; and
>
> (2) Received, at the telephone number assigned to such service, more than one text message containing the word "REGAL" from the short-code number 61633.

8. On February 13, 2020, Defendant filed and served its Motion to Set Aside Clerk's Default and Motion for Leave to File Responsive Pleading (Dkt. 10). The Answer and Affirmative Defenses that Defendant intends to file upon the Court's granting of such motion is attached hereto as Exhibit B.

## MEMORANDUM OF LAW

### A. Standard for Class Certification

"[A] clerk's entry of default does not change the analysis that a district court must undertake in deciding whether to certify a class because any other conclusion might give defendants an incentive to default in situations where class certification seems likely. *Jackson v. Paycron, Inc.*, 2019 WL 2085430, (M.D. Fla. May 13, 2019). To that end, certification under Rule 23 remains a procedural requirement for a class to recover damages. *Id.* A court may therefore only certify a class action if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been met." *Id. Saade v. Insel Air*, No.

17-22003-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 59189, at *4 (S.D. Fla. Apr. 4, 2019).

There are four prerequisites for class certification under Federal Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Id. See* Fed. R. Civ. P. 23(a); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). In addition, a plaintiff must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b). *Id.*

"[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact," including specifically allegations relating to the prerequisites for class certification under Federal Rule 23. *Jackson v. Paycron, supra*; *Amadi v. Ace Homecare, LLC*, No. 8:17-cv-02191-T-02JSS, 2019 WL 1392453, at *1 (M.D. Fla. Mar. 28, 2019). However, a defaulted defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

### B. Plaintiff Cannot Prove the Class Requirements Under Either Rule 23(b)(2) or Rule 23(b)(3).

In the instant case, Plaintiff seeks certification under Rule 23(b)(2), which provides that the plaintiff must prove that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; and Rule 23(b)(3), which requires plaintiff to prove (1) predominance of the questions of law or fact common to the members of the class over any questions affecting only individual members, and (2) superiority of a class action for the fair and efficient adjudication of the controversy. *See Amchem*, 521 U.S. at 625.

To the extent that Plaintiff and the putative class members seek monetary damages, class certification is not appropriate under Rule 23(b)(2). *AA Suncoast Chiropractic Clinic, P.A. v. Progressive American Insurance Co.*, No. 17-13003 (11th Cir. 2019). Here, Plaintiff

6

and the putative class members are seeking statutory monetary damages (Dkt. 1) and, therefore, class certification is inappropriate for such damage claims.

Moreover, to the extent Plaintiff is seeking class certification for injunctive relief, Defendant contends that it sent text messages to Plaintiff and any putative class members without using an ATDS as that term is defined pursuant to the *Glasser* case and/or that Plaintiff and any putative class members provided express consent to receive text messages as required under the TCPA. (Declaration of Denise Davis). *See, Newhart v. Quicken Loans*, 2016 WL 7118998 (S.D. Fla. 2016). Thus, class certification for injunctive relief is not appropriate.

"The Rule 23(b)(3) predominance inquiry test whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *AmChem*, 521 U.S. at 623-24 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement). Predominance focuses on the relationship between the common and individual issues. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted). *7

The Eleventh Circuit has held that common issues of fact or law predominate if they have a "direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). The Eleventh Circuit also has cautioned that "[s]erious drawbacks to the maintenance of a class action are presented where initial determinations such as the issue of liability *vel non*, turn upon highly individualized facts." *Rustein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1235-36 (11th Cir. 2000).

For example, in *Newhart v. Quicken Loans*, 2016 WL 7118998 (S.D. Fla. 2016), the court denied class certification because determining whether each class member provided the requisite consent under the TCPA would "depend upon multiple layers of individualized evidence about each call and the circumstances that preceded it." 2016 WL 7118998 at *2. That is because, in addition to the threshold inquiry of whether each class member consented to the call, the factfinder would *also* need to determine whether each challenged call was made for a telemarketing purpose. *Id.*

In the instant case, Plaintiff cannot prove the predominance of the questions of law or fact common to the members of the putative class over any questions affecting only individual members for several reasons. First, as set forth in the Declaration of Denise Davis, during the relevant time period for this matter, Defendant sent marketing texts only to individuals who (1) signed up to be RCC members; (2) voluntarily provided their mobile telephone numbers; (3) opted-in to receive up to 4 marketing texts per month and, therefore, provided express consent to receive such texts; (4) received certain texts targeted to them based on certain filtered criteria including their cinema activity, transaction data, movie-going behavior;  (6) received the texts from equipment that was not an ATDS because such equipment sent texts to a targeted group rather than using a random or sequential number generator; and (7) received the texts from equipment that was not an ATDS because such equipment could not and/or or did not send the texts without human intervention.

Unquestionably, based on *Glasser*, the Plaintiff and any putative class members who received texts from equipment that was not an ATDS have no TCPA claim and must be excluded from the class.  Similarly, the Plaintiff and any putative class members who provided express consent to receive the texts have no TCPA claim and must be excluded from the class.

*See*, *Newhart v. Quicken Loans, supra.* Thus, the determination of class status turns upon highly individualized facts regarding whether Plaintiff and individual putative class members received texts from an ATDS or not[1] and whether the Plaintiff and individual class members provided express consent.

Further, the number and content of the texts sent to Plaintiff and each individual putative class members were determined by each individual's cinema activity, transaction data, and movie-going behavior, among other criteria. Thus, any liability determinations and damage calculations for Plaintiff and each individual putative class members will turn upon highly individualized facts.

Based on the foregoing, Plaintiff cannot prove the predominance of the questions of law or fact common to the members of the putative class over any questions affecting only individual members and Plaintiff's Motion for Class Certification and for Leave to Take Discovery Prior to Entry of Final Judgment should be denied.

**WHEREFORE**, Defendants respectfully requests that this Court Motion for Class Certification and for Leave to Take Discovery Prior Entry of Final Judgment.

**DATED** February 27, 2020.

                                        Respectfully Submitted,

                                        */s/ Grant D. Petersen*
                                        Grant D. Petersen
                                        Florida Bar Number 378682
                                        E-mail: grant.petersen@ogletree.com
                                        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

---

[1] It is anticipated that Plaintiff will argue that, as a result of the entry of default, Defendant has admitted to the allegations that it sent texts to Plaintiff and the putative class members by using an ATDS as defined by the TCPA. However, such "admission" would be an admission of law and Defendant cannot admit to a conclusion of law. *Duncan v. Sabal Palms I Assocs., Ltd.*, No. 89-3 CIV-FtM-10(A), 1990 WL 10600304, at *3 (M.D. Fla. June 7, 1990). In any event, the entry of default occurred prior to the Eleventh Circuit's decision in *Glasser*, which narrowed the definition of an ATDS under the TCPA for pending cases within the Eleventh Circuit. Thus, Defendant contends that it could not have admitted that it used an ATDS as such term is now defined under the narrow *Glasser* criteria and that any pre-*Glasser* admission is non-binding.

        100 North Tampa Street, Suite 3600
        Tampa, Florida  33602
        Telephone:  813.289.1247
        Facsimile: 813.289.6530
        ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 27th day February, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Plaintiff's counsel, Frank Hedin, at:.

    Frank S. Hedin, Esq.
    Hedin Hall LLP
    1395 Brickell Ave., Suite 1140
    Miami, Florida 33131
    E-mail: fhedin@hedinhall.com

**I FURTHER CERTIFY** that to the best of my knowledge there are not any non-CM/ECF participants that require notification of this response via U.S. Mail.

        /s/ *Grant D. Petersen*
        Grant D. Petersen

41984643.1